UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RETH KEM,

    Petitioner,

    v.                                CAUSE NO. 3:25cv997 DRL-SJF

KRISTI NOEM, SAMUEL OLSON,
and BRIAN ENGLISH,

    Respondents.

OPINION AND ORDER

Immigration detainee Reth Kem, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing he was being unlawfully detained by United States Immigration and Customs Enforcement (ICE). The respondents have answered the petition, and Mr. Kem has replied. For the following reasons, the court will grant the petition.

In 1983, as a child, Mr. Kem came from Cambodia (also called Kampuchia) to the United States. He was admitted to the United States as a refugee and became a permanent resident. In 1993, he was convicted of aggravated robbery in Texas and sentenced to eight years of imprisonment. While he was incarcerated, he was served with a notice to appear, charging him with being deportable based on that aggravated felony conviction. He was ordered removed, and the removal order became final in 1998.

Upon Mr. Kem's release from prison in 2001, he was taken into ICE custody for removal. In March 2001, ICE requested travel documents for Mr. Kem from Cambodia. The Kingdom of Cambodia denied the request, stating that the "Government of the United

State[s] of the America and the Royal Government of Cambodia have not yet negotiated an agreement to cover the deportation and return of former Cambodian Citizens to Cambodia." The Royal Embassy of Cambodia, therefore, was not authorized to issue Mr. Kem travel documents. Mr. Kem was released from ICE custody in May 2001 on an order of supervision. The report recommended his release:

> I RECOMMEND this subject be released on an Order of Supervision. Although he has been convicted of a serious crime, he has completed his full sentence and has been detained by INS awaiting deportation. He is from a county that the Service is unable to remove him to at this time. I feel this subject meets the criteria justifying his release from INS custody on an Order of Supervision.

The respondents do not contest that Mr. Kem complied with all the requirements of his supervision order.

On October 17, 2025, Mr. Kem was detained and placed in ICE custody during a check in at the Dallas Field Office. The report documenting his apprehension stated:

> The subject, KEM, RETH, was encountered on October 17, 2025, by Immigration Officers during the routine performance of Non-Detained Lobby duties at the Dallas Field Office. Upon reviewing checks, it was revealed that the subject was a Final Order (11-30-1998) with no pending applications or appeal and the subject was then taken into custody after redetermination.

He is currently at Miami Correctional Facility in ICE's custody.

The respondents first argue that the court lacks subject matter jurisdiction to hear Mr. Kem's petition, contending that 8 U.S.C. § 1252(g) strips the court of jurisdiction. Section 1252(g) states that, except as provided in this section, no court shall have jurisdiction to hear any case, including in habeas, "on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders

2

against any alien under this chapter." 8 U.S.C. § 1252(g). The respondents argue that Mr. Kem's detention falls under the decision to execute his removal order, so the court must dismiss the petition.

Section 1252(g) does not reach this broadly. It "applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999) (quotations omitted). As the law stands, it remains "implausible" that mentioning these three discrete events "was a shorthand way of referring to all claims arising from deportation proceedings." *Id.; see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) ("We did not interpret this language [in § 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). Section 1252(g) applies only when "the alien's well-pleaded complaint is based on one of [its] three listed factors." *Fornalik v. Perryman*, 223 F.3d 523, 531 (7th Cir. 2000). Here, Mr. Kem's petition does not challenge ICE's power to remove him to Cambodia. The sole issue is whether he will be detained while that effort proceeds. This question does not impede ICE's ability to remove him.

The respondents next argue that Mr. Kem's current detention is lawful under 8 U.S.C. § 1231(a). Under this statute, all noncitizens must be detained for a 90-day "removal period," which for Mr. Kem began in 1998 when his removal order became administratively final. *See* 8 U.S.C. §§ 1231(a)(1), (a)(2)(A). Beyond that 90-day period, § 1231(a)(6) authorizes the detention of (1) noncitizens who are inadmissible under 8 U.S.C. § 1182, (2) noncitizens who

3

are removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4), and (3) noncitizens whom the Attorney General has determined to be a risk to the community or unlikely to comply with the order of removal. 8 U.S.C. § 1231(a)(6). For those noncitizens, they "may be detained beyond the removal period[.]" 8 U.S.C. § 1231(a)(6). For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, the statute instructs that they be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

Mr. Kem's detention falls under the ambit of § 1231(a)(6). The scope of that detention nonetheless remains subject to the limits set forth in *Zadvydas v. Davis*, 533 U.S. 678 (2001), which guard against the possibility of a noncitizen's indefinite detention when his removal cannot be carried out. In *Zadyvdas*, to avoid a constitutional problem with the statute, the Supreme Court read § 1231(a)(6) to "limit[] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689. "It does not permit indefinite detention." *Id.*

The two arguable purposes of this detention—civil in nature as it is—are "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Id.* at 690 (cleaned up). The first aim seems weak or nonexistent here when removal remains a remote event and when there has not been any record of flight in decades. The second aim of preventing danger to the community, a perfectly laudable goal and no less so when someone has been convicted of aggravated robbery, justifies detention "only when limited to specially dangerous individuals and subject to strong procedural protections." *Id.* at 691. Even then, often detention lasts only for a time, for a "potentially

4

*indefinite* duration" based on dangerousness must be "accompanied by some other special circumstance, such as mental illness, that helps to create the danger." *Id*.

*Zadvydas* held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," *id*. at 699, though the law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order, *id*. at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id*. Today's case is thus more involved than merely citing § 1231(a)(6) as the basis for continued detention.

The respondents thus turn to the presumptively reasonable six-month period identified in *Zadvydas* and argue that because Mr. Kem's current detention has lasted less than six months, his detention is presumptively reasonable under *Zadvydas*. *Zadvydas*, however, addressed the initial period of detention following a final order of removal and the conditions on which it could be extended. It did not address this situation, where a noncitizen was initially detained (by ICE in 2001 after his prison term), released on a supervision order because removal was not reasonably foreseeable (later in 2001), and then re-detained (in 2025).

There is nothing in *Zadvydas*, or in a statute that the government cites, that would support allowing ICE to re-detain a noncitizen in Mr. Kem's shoes, who remains subject to an order of supervision, and hold that person for six months without justification. *Zadvydas* explicitly acknowledged the possibility of re-detention to protect the community: "the

5

alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. This is re-detention for cause—for instance, by violating the supervision order's governing conditions of release—not re-detention for no new reason other than ICE encountered him during a routine check-in at its field office in Dallas. Were this matter about Mr. Kem's detention in 2001, today's result may be different, but the respondents cannot rely solely on the presumptive six-month period from *Zadyvdas* to justify his re-detention in 2025 when there has been no record of any violations of his supervision order or other legitimate justification for re-detention. *See, e.g.*, 8 U.S.C. § 1252(a)(2)(C) (criminal aliens).

Accordingly, the respondents argue that the government has "extraordinarily broad discretion" to revoke an order of supervised release under 8 C.F.R. § 241.4(l), and its discretion is not limited to violations of his supervisory conditions. Reliance on this regulation is puzzling for two reasons. First, regulations cannot give the agency more power than is granted to it by statute and must also comport with the Constitution. *See Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000) ("Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority in a manner that is inconsistent with the administrative structure that Congress enacted into law.") (quotations omitted). Second, based on the regulation's plain language, it does not apply to Mr. Kem. Instead, his situation is governed by § 241.13.

The regulations have two sets of rules governing the detention of noncitizens after a final removal order. Section 241.4 governs detention of noncitizens for whom removal is still reasonably foreseeable:

> The custody review procedures in this section *do not apply* after the Service[1] has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is *no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future.* . . .

8 C.F.R. § 241.4(b)(4) (emphases added). By contrast, § 241.13 applies when removal cannot be called reasonably foreseeable:

> *Section 241.4 shall continue to govern* the detention of aliens under a final order of removal, including aliens who have requested a review of the likelihood of their removal under this section, *unless* the Service makes a determination under this section that there is no significant likelihood of removal in the reasonably foreseeable future. . . .

8 C.F.R. § 241.13(b)(1) (emphases added). Thus, the broad discretion the agency possesses under § 241.4 to revoke supervised release proves consistent with *Zadvydas* because the justification for detention in that scenario—ensuring the noncitizen is present at the time of removal—makes sense when removal is reasonably foreseeable.

Once removal is not reasonably foreseeable, a noncitizen's detention cannot be governed by § 241.4, as the government would hope today. And the government has already determined that Mr. Kem's removal is not reasonably foreseeable—a conclusion that the

---

[1] "Service means U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and/or U.S. Immigration and Customs Enforcement, as appropriate in the context in which the term appears." 8 C.F.R. § 1.2. "The term Service means the Immigration and Naturalization Service, as it existed prior to March 1, 2003. Unless otherwise specified, references to the Service on or after that date mean the offices of the Department of Homeland Security to which the functions of the former Service were transferred pursuant to the Homeland Security Act, Public Law 107–296 (Nov. 25, 2002), as provided in 8 CFR chapter I." 8 C.F.R. § 1001.1(c). The Service would seem to be ICE here.

court leaves undisturbed. At this point, there can be two reasons for revoking release: either a violation of release conditions such that a noncitizen can be returned to custody, 8 C.F.R. § 241.13(i)(1), or revocation and re-detention because, "on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2). In the latter scenario, when a noncitizen is re-detained because removal becomes reasonably foreseeable, his detention reverts to being governed by § 241.4. *Id.*

Section 241.13 was added in response to *Zadvydas*. *See* Continued Detention of Aliens Subject to Final Orders of Removal, 66 F.R. 56967-01 ("In light of the Supreme Court's decision in *Zadvydas*, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained alien after the expiration of the removal period. Specifically, the rule provides a process for the Service to make a determination as to whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future."). It reinforces the conclusion in *Zadvydas* that continued immigration detention after a final order of removal absent a violation of release turns on whether removal is reasonably foreseeable.

Here, there is no allegation or evidence that Mr. Kem violated a condition of his release. His final removal order has existed since 1998. He satisfactorily established in 2001 that his removal was not reasonably foreseeable. No one presents any record that circumstances have changed or that additional steps have been taken to accomplish his removal. *See, e.g., Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (burden rests on

8

the government). No additional travel documents have been requested from Cambodia, and no alternative country has been identified that might accept Mr. Kem for removal.

In lieu, the respondents address certain regulations but leave entirely unaddressed both 8 C.F.R. § 241.13(b)(1) and § 241.4(b)(4), which explain that the government cannot now proceed under § 241.4 as it wishes. Nor have the respondents today requested that the court permit ICE to proceed under § 241.13(i)(2), and the court cannot make arguments for them. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375-80 (2020) (party presentation rule).

What the court can do is require all the parties to abide by the immigration rules and constitutional mandates that exist regarding detention—noncitizens must do so to the letter of the law, and so must the government. Without any sign of progress toward removal or record of changed circumstances, the respondents offer no basis for Mr. Kem's continued detention, whether under 8 U.S.C. § 1231(a)(6) or another. If under *Zadvydas*, 533 U.S. at 700-01, the "court should hold continued detention unreasonable and no longer authorized by statute" when removal is not reasonably foreseeable, how truer that is when this particular noncitizen has been re-detained without a seeming justification and when removal remains far from foreseeable on this unchanged record. Of course, efforts to remove Mr. Kem may continue, and he will remain subject to supervision while on release. Circumstances one day may change to permit his re-detention, but that isn't today.

For these reasons, the court GRANTS the petition (ECF 1) to the extent the court ORDERS the respondents to release Reth Kem on the same conditions of supervised release that existed before his re-detention and to certify compliance with this order by filing a notice with the court by **January 15, 2026**, and DIRECTS the clerk to email a copy of this

order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

January 14, 2026	*s/ Damon R. Leichty*
	Judge, United States District Court